IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| **NAKENDRA CLIFTON**, a/n/f | § | |
| | § | |
| ████████████ | § | |
| *Plaintiff,* | § | |
| | § | Civil Action No. 9:03-CV-295 |
| v. | § | |
| | § | |
| **OTHA ANTHONY,** | § | JUDGE RON CLARK |
| | § | |
| *Defendant.* | § | |
| | § | |

## ORDER DENYING PLAINTIFF'S MOTION
## FOR SUMMARY JUDGMENT
## AND DENYING DEFENDANT'S CROSS MOTION

Before the court is Plaintiff's Motion for Summary Judgment [Doc. # 47], and

Defendant's Cross-Motion for Partial Summary Judgment [Doc. #49]. Responses and replies to

the summary judgment have been filed by both parties. Because ██████████ and Jared Belser's

parents are all nearest relatives of Jared Belser, Plaintiff's motion for summary judgment is

denied as to the two insurance policies not naming Defendant as a beneficiary. The court also

finds the remaining two policies involve genuine fact issues as to whether Jared Belser named

Defendant Anthony as the contingent beneficiary. Accordingly, Plaintiff's motion for summary

judgment is DENIED and Defendant's cross motion is DENIED.

### I. Background

On June 27, 2002, Jared Belser died of a gun shot wound to the head. At the time of his

death, four different polices named him as insured. Each of these policies had been purchased by

1

his wife, Shy Anne Belser, through her employer from 1998-2001. All four policies named her as the primary beneficiary, and three of the policies made contingent beneficiary designations. The policies at issue here are: Policy number 8019288890 ("Policy 1") naming Jared Belser's estate as contingent beneficiary, Policy number 90060971OU ("Policy 2") which failed to designate any contingent beneficiary, Policy number 9092297990 ("Policy 3") and Policy number 909378437U ("Policy 4") naming Defendant Otha Anthony, deceased's step-mother, as contingent beneficiary. Following the issuance of these policies and Jared Belser's death, Shy Anne Belser was convicted of his murder in a Texas court on June 16, 2003. Due to these unusual events, American Heritage Life Insurance Company ("AHL"), the issuing company for each policy, filed an interpleader action on November 14, 2003.

AHL admitted liability in the amount of $78,528 for the policies (the aggregate amount due under the four policies), but claimed a good faith doubt as to who should be paid. Originally, AHL filed suit against Shy Anne Belser (his wife), ███████ (his child), Otha Anthony (his step-mother), The Estate of Jared Belser, and Professional Funeral Associates, Inc., as each made a claim to the proceeds. However, Professional Funeral Associates was dismissed on July 17, 2005, and on March 7, 2005 a default judgment was entered against Shy Anne Belser and the Estate of Jared Belser that they take nothing of the insurance proceeds. Moreover, AHL deposited the full amount in question into the court's registry and was dismissed from this suit on March 24, 2005. Therefore, only Clifton and Anthony remain. Pursuant to an oral order on April 22, 2005, the parties were realigned to the case's current disposition, where Clifton is the Plaintiff and Anthony the Defendant.

Clifton seeks summary judgment on all four policies. She alleges: (a) there is no dispute

2

as to Policies 1 and 2; (b) the naming of the contingent beneficiary, Otha Anthony, in the remaining policies was not made by Mr. Belser; and (c) in the case of Policy 4 Mr. Belser' signature was forged. Anthony responds with her own cross motion for summary judgment alleging: (a) Plaintiff lacks standing to challenge the designations; (b)Plaintiff's claims are barred by res judicata; (c) Mr. Belser did make the contingent beneficiary designations (d) there was no forgery on Policy 4; and (e) Plaintiff attempts to use extrinsic evidence to create ambiguities in the Policies.

## II. Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Movant may show that the undisputed material facts affirmatively establish a right to judgment. Alternatively, movant may establish that the other party has the burden of proof at trial, and has failed to "make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

In order to avoid summary judgment, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986); *Anderson*, 477 U.S. at 257. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Fed. R. Civ. P. 56

3

requires that the nonmoving party set forth specific facts showing that there is a genuine issue for

trial. *Anderson*, 477 U.S. at 256. Only a genuine dispute over a material fact (a fact which might

affect the outcome of the suit under the governing substantive law) will preclude summary

judgment. *Anderson*, 477 U.S. at 248. The dispute is genuine if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party on the issue. *Id.* If the factual

context renders a claim implausible (for example if the claim simply makes no economic sense)

nonmovants "must come forward with more persuasive evidence to support their claim than

would otherwise be necessary." *Matsushita*, 475 U.S. at 587.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings,

depositions, answers to interrogatories, admissions, and affidavits. All reasonable inferences to

be drawn from the underlying facts must be viewed in the light most favorable to the party

opposing the motion, and any doubt must be resolved in its favor. *Matsushita*, 475 U.S. at 587.

However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the

evidence. *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468 (1992).

### III. Analysis

#### A. Interests in Policy 1 and 2

When no response to a summary judgment motion is filed, the court may accept as

undisputed the movant's version of the facts and grant summary judgment when a prima facie

case for entitlement is made. *Eversley v. Mbank Dallas*, 843 F.2d 172, 174 (5th Cir. 1988).

Further, the Local Rules of the Eastern District of Texas explicitly state, "[i]n the event a party

fails to oppose a motion ... the Court will assume that the party has no opposition." Local Rule

4

CV-7(d).  Here, Defendant has not opposed Plaintiff's motion as to Policies 1 and 2.

Nevertheless, the court will examine Clifton's claims to these policies.

### 1. Under Texas law, where a beneficiary of an insurance policy willfully murders the insured, the beneficiary cannot receive the policy proceeds and the Insurance Code dictates the distribution of the proceeds.

Any person convicted and sentenced as a principal in willfully brining about the death of

the insured cannot take as a beneficiary. Tex. Prob. Code § 41(d).  Shy Anne Belser's conviction

for murder establishes that she willfully brought about the death of her husband and she is

disqualified under this section from taking any insurance proceeds. *See Francis v. Marshall*, 841

S.W.2d 51, 53-54 (Tex. App.–Hous. [14th] 1992).  (There is no evidence to suggest that either

Clifton or Anthony were in any way involved in Mr. Belser's death.)

In such cases, the Probate Code directs the payment of proceeds to be in accordance with

the provisions of the Insurance Code.  The pertinent section of the Insurance Code provides that a

contingent beneficiary should receive the proceeds.  If none is named or able to take, then the

nearest relative of the insured is to receive the insurance proceeds. Tex. Ins. Code Art. 21.23

(2002).[1]  Policy 2 does not name a contingent beneficiary, and default judgment has been entered

that Policy 1's contingent beneficiary (Mr. Belser's Estate) take nothing.  The nearest relative of

Mr. Belser should receive the proceeds from these policies.  The Insurance Code, however, does

---

[1] Both parties cite to Texas Insurance Code § 1103.151-2, which is the current version of the statute noted above.  However, the current statute did not go into effect until June 1, 2003 and is not retroactive.  The law, as it was at the time of the events, is outlined above.  The court notes, though, that the same result is reached under either version of the statute.

not define specifically the term "nearest relative."

> ## 2. In the Insurance Code, the term "nearest relative" is defined by its ordinary usage and plain meaning.

According to the Texas Code of Construction Act, in cases where there is no defined meaning of a word in the relevant code, "words and phrases shall be read in context and construed according to the rules of grammar and common usage." Tex. Gov't Code § 311.011(a). "It is cardinal law in Texas that a court construes a statute, 'first, by looking to the plain and common meaning of the statute's words.'" *Fitzgerald v. Advanced Spine Fixation Systems, Inc.*, 996 S.W.2d 864, 865 (Tex. 1999)(citations omitted). Black's Law Dictionary defines a relative as "a person connected with another by blood or affinity; a person who is kin with another." *Black's Law Dictionary* 1314 (8th ed. 2004).

This definition of relative is consistent with other portions of the Texas Code. The Business and Commerce Code states that a relative is "an individual related by consanguinity within the third degree as determined by the common law . . ." Tex. Bus. & C. Code § 24.002(11). The Property Code defines a relative as "a spouse or, whether by blood or adoption, an ancestor, descendant, brother, sister, or spouse of any of them." Tex. Prop. Code § 111.004(13). The court concludes that the common usage of the word "relative" includes a person's child.

Here, the record reflects a DNA test showing ███████ to be Jared Belser's child and contains Plaintiff's undisputed affidavits from Mr. Belser's parents that ███████ is his only child. *See* Pl.'s Mot. For Summary Judgment, Ex. A and B ("My son Jared Belser had only one

6

child, ▮▮▮▮▮▮▮"). Therefore, ▮▮▮▮▮▮▮ is related to Mr. Belser within one degree of

sanguinity.

However, Mr. Belser's parents are also related within this same degree. Even though they

were not parties to the original suit, his parents are also nearest relatives and could be entitled to

the proceeds. Without proof that they have disclaimed any interest in the proceeds, at this time

the court cannot award ▮▮▮▮▮▮▮ the insurance proceeds from Policy 1 and 2.

### B. Challenges and Competing Claims regarding Policy 3 and 4

#### 1. Plaintiff has standing to challenge the beneficiary designations on Policies 3 and 4.

Defendant argues that Plaintiff lacks standing to challenge the designation of Otha

Anthony in Policies 3 and 4. Defendant's basis for this argument is that Plaintiff cannot meet

any of the requirements of Texas Probate Code § 42(b), which provides for ways to establish

inheritance rights in probate proceedings. However, this section does not govern here.

At issue are the proceeds from insurance policies, which the Probate Code directs is

governed by the Insurance Code, see above. Since Defendant only makes mere conclusory

remarks regarding whether ▮▮▮▮▮▮ is Mr. Belser's child and nearest relative, providing no

evidence to contradict Plaintiff's affidavits,[2] the analysis of whether ▮▮▮▮ is the nearest relative

is the same as above. As a nearest relative, she has standing to challenge the designation because

she will take at least some portion of the insurance proceeds if the contingent beneficiary

---

[2]In fact, Defendant actually admits that ▮▮▮▮▮▮▮ was Mr. Belser's child. *See* Def.'s
Response and Cross-Mot. For Summary Judgment, ¶ 5.

designation is invalid or unenforceable.

### 2. Plaintiff's claims against Defendant are not barred by the doctrines of res judicata or collateral estoppel.

Defendant cites the agreed order issued on March 24, 2005 dismissing AHL as providing the basis for a res judicata or collateral estoppel claim against Plaintiff. However, Defendant's argument on this issue is misguided. Fed. R. Civ. P. 22(1) allows the insurance company "to put the money . . . in dispute into court, withdraw from the proceeding and leave the claimants to litigate between themselves the ownership of the fund in court." *Commercial Union Ins. Co. v. U.S.*, 999 F.2d 581, 583 (D.C. Cir. 1993)(citations and quotations omitted). The court's March 24, 2005 order dismissed AHL from the suit, leaving Clifton and Anthony to litigate amongst themselves who has the claim to the proceeds. The order did not affect the rights of the parties in relation to each other; it only determined the rights of the parties in regards to a suit against AHL.

### 3. There is a genuine issue of material fact as to whether Mr. Belser named Otha Anthony as contingent beneficiary on Policies 3 and 4.

Under Texas law, following a willful killing, the proceeds go first to the contingent beneficiary "named by the insured." Tex. Ins. Art. 21.23 (2002). Plaintiff argues that Article 21.23 requires that the insured must actually name the beneficiary himself, and sign the policy.[3]

---

[3]Defendant makes allegations that Plaintiff is bringing in parol evidence and using extrinsic evidence to create ambiguities by asserting that Mr. Belser did not sign the policy. However, Plaintiff's challenges stem from the claim that, as a matter of law, Clifton failed to designate the beneficiaries himself. Plaintiff is not arguing about the terms of the policies, so there is no issue of extrinsic evidence.

However, the Insurance Code explicitly provides that the insured can name a beneficiary by either actually naming the person themselves in writing or, where the policy is purchased by a third party, an insured may name a beneficiary by consenting to the designation of the beneficiary in writing. *See* Tex. Ins. Art. 3.49-1, Sec. 2- Sec. 3(2002)[4]. Additionally, there is no requirement in the relevant law that the insured must actually sign the policy.

In Policy 3, the unsigned policy, there is no question that a written document designates Otha Anthony as contingent beneficiary. *See* Pl. Mot. For Summary Judgment, Ex. C. However, because Mr. Belser did not sign the application, there is a question of whether or not he consented to the designation in writing or made the designation himself. He may have filled out the name of Otha Anthony, and merely forgot to sign. He may have only filled out some parts of the application, and this served as his consent to the beneficiary designation. His name does appear on the policy as the insured. On the other hand, his wife may have filled out the form entirely on her own. He may have had nothing to do with the designations.

There is some doubt, then, that Mr. Belser named Otha Anthony as the contingent beneficiary. However, mere doubt is not enough to find for Plaintiff.

In Policy 4, the alleged forged document, there is also the issue of whether or not Mr. Belser consented to or made the policy designations. Unlike Policy 3, however, Mr. Belser's signature is on this insurance application. If he did in fact sign this policy, then this would be evidence that tends to show he consented in writing to the designation of Otha Anthony, or designated her beneficiary.

---

[4]The current version is Tex. Ins. § 1103.055. However, because the policies in question were effective after January 1, 2000, the statutes listed in the text above govern. There is no substantial changes between the two versions.

9

To challenge this point, Plaintiff provides two affidavits from Mr. Belser's parents stating that the signature on the policy is not their son's signature. *See* Pl.'s Mot. For Summary Judgment, Ex. A and B. Defendant responds with an affidavit from Anthony that the signature is Mr. Belser's. *See* Def.'s Sur-Reply, Ex. 1. Additionally, there is evidence from the Affidavit of Robert Dunkin, the agent who issued the policy, that he cannot remember if Mr. Belser signed the form or if his wife signed his name. *See* Pl.'s Reply, Ex. A.

Given the conflicting evidence on whether or not Mr. Belser's signature was a forgery, there is a genuine issue of whether or not he named Otha Anthony beneficiary. Neither party can carry the initial burden to show they are entitled to judgment as a matter of law. *See Anderson*, 477 U.S. at 256 (1986).

## IV. Conclusion

The court finds that while Plaintiff is entitled to judgment against Anthony as to Policy 8019288890 and Policy 9000609710U, the court cannot finally award the proceeds at this time because of the interests of Mr. Belser's parents. The court also finds that a genuine issue of material fact exists as to whether or not Mr. Belser, as the insured, named Defendant Otha Anthony as contingent beneficiary for Policy 909378437U and 9092297990. The case will proceed to trial for a determination of whether Defendant Anthony was named as beneficiary.

10

IT IS THEREFORE ORDERED that Plaintiff's Motion for Summary Judgment **[Doc. #**

47] is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Cross-Motion for Summary Judgment

**[Doc. # 49]** is **DENIED**.

So **ORDERED** and **SIGNED** this **15** day of **September, 2005**.

_Ron Clark_

Ron Clark, United States District Judge